JOHN MILLER *vs.* J. B. McCARTY.

November 10, 1891.

**Mortgage of Exempt and Other Property—Execution Lien on Other Property alone—Rights of Mortgagor.**—Where a mortgage covers both exempt and non-exempt property, the mortgagor has a right, both as against the mortgagee and as against a creditor having a lien, by judgment or the levy of an execution, upon the non-exempt property alone, to demand that the mortgagee first exhaust the non-exempt property before resorting to the exempt.

**Same—Right, by whom and when to be Asserted.**—But this is a right which the mortgagor must seasonably assert for himself.    The mortgagee is not required to assert it for him, or to institute proceedings to protect it.

*Same—Right Subject to Equities.*—Moreover, the rule, being founded in mere equity, will not be enforced where, from the acts or omissions of the mortgagor, it would be inequitable to do so.

Plaintiff brought this action in the district court for Big Stone county to recover possession of two horses, two cows, and 250 bushels of wheat, of the alleged value of $325, mortgaged to him by the defendant. In his answer the defendant alleged title in himself to the horses and cows, and that they were exempt, and asked judgment for their return and damages. At the trial, before *C. L. Brown,* J., the facts appearing which are stated in the opinion, a verdict was directed for plaintiff. The defendant appeals from an order refusing a new trial.

*F. L. Cliff,* for appellant.

*E. T. Young,* for respondent.

MITCHELL, J. The defendant bought of plaintiff a quantity of seed-wheat, and, as security for the purchase price, executed a "seed-grain" note, and also a chattel mortgage on two cows and two horses. Subsequently defendant, having discovered that a mistake had been made in the description of the land upon which the grain was to be sown, executed another seed-grain note, antedated as of the date of the first one, and of the same tenor, except that it described correctly the land upon which the grain was sown. During the intervening time, and after the grain was sown, one Clark attached the crops as the property of the defendant. The plaintiff claims that the second seed-grain note was executed merely to correct the mistake in the first one, while defendant claims that it was given and accepted as absolute payment of the first, and consequently had the effect of discharging the chattel mortgage. We think the undisputed facts in the case conclusively establish that the second note was given merely to correct the mistake in the first, and consequently did not affect the lien of the mortgage. Even if plaintiff had promised to satisfy the mortgage, the agreement would not have been enforceable, because without consideration. Undoubtedly one note may be accepted as payment of another, and in such case no consideration, other than the new note, is necessary to support the contract. But here the new note, when given, was merely a fulfilment of the orig-

inal contract, and was nothing more than plaintiff was entitled to, or than the law would have compelled by correcting the instrument so as to conform to the actual agreement of the parties. The debt has never been paid, the mortgage has never been actually released, and default has been made in its conditions. Consequently plaintiff is entitled to the possession of the mortgaged property, unless his acts and conduct have been such as to operate in law as a discharge of the lien of the mortgage, or to estop plaintiff from asserting that lien against the defendant. The mortgaged property was exempt, while part of the crop covered by the lien of the seed-grain note was not; and the defence of the defendant is, in substance, that he had a right to require the plaintiff to first exhaust the non-exempt grain before resorting to the exempt property covered by the mortgage; that he made this demand, but that plaintiff and Clark, the attaching creditor, combining together to deprive him of this right, so conducted matters that the non-exempt grain was all applied on Clark's claim, leaving plaintiff's claim to be satisfied wholly out of the exempt property, and therefore plaintiff is now estopped from asserting the lien of his mortgage. Of course, in this defendant assumes that Clark's attachment lien was subsequent to the lien of plaintiff's seed-grain note, for, if it was prior to it, the entire foundation falls out from under defendant's case.

The marshalling of securities between different classes of creditors, where a first mortgage covers both exempt and non-exempt property, and the subsequent lien of another creditor covers only the non-exempt property, is a subject upon which there is a conflict of decisions. The question has generally arisen where the exempt property involved was a homestead, but we see no reason for applying any different rule to homestead exemptions from that to be applied to any other exempt property. The doctrine of some courts is that the power of a court to compel a mortgagee to resort, in the first instance, to one of several estates mortgaged, is exercised only for the protection of the equities of different creditors or incumbrancers, or of sureties, and never for the benefit of the mortgagor; and that the fact that the first mortgage is on exempt as well as non-exempt property, and the second lien only on the non-exempt, does not change the general equity

rule that a person having a right to resort to two funds, in one of which alone another person has a junior lien, shall be compelled to first exhaust the fund to which the other cannot resort. *Searle* v. *Chapman,* 121 Mass. 19; *Jones* v. *Dow,* 18 Wis. 241; *White* v. *Polleys,* 20 Wis. 503; *Chapman* v. *Lester,* 12 Kan. 592; *Plain* v. *Roth,* 107 Ill. 588; *Webster* v. *Bronston,* 5 Bush, 521, (divided court;) *State Savings Bank* v. *Harbin,* 18 S. C. 425; *Hallman* v. *Hallman,* 124 Pa. St. 347, (16 Atl. Rep. 871.) In other states it is held that, as the mortgage of exempt property for a particular debt is only a waiver of the exemption as to that debt, and only to the extent necessary to satisfy that debt, therefore the right of the mortgagor to his exemption, which is favored by the law, is superior to the equity of the junior creditor; and consequently the general rule as to marshalling assets between different creditors does not apply to such cases, but, on the contrary, the mortgagor has the right not only as against the mortgagee, but also as against subsequent incumbrancers, to require the first mortgagee to exhaust the non-exempt property before resorting to the exempt. *Armitage* v. *Toll,* 64 Mich. 412, (31 N. W. Rep. 408;) *McLaughlin* v. *Hart,* 46 Cal. 638; *Wilson* v. *Patton,* 87 N. C. 318. In *McArthur* v. *Martin,* 23 Minn. 74, and *Horton* v. *Kelly,* 40 Minn. 193, (41 N. W. Rep. 1031,) this court adopted the latter rule, at least where the second lien has been acquired by proceedings *in invitum,* and not by the contract of the debtor.

But this rule, like all the rules relating to the marshalling of assets, is one founded on the basis of mere equity, and will not be enforced to the displacement of a countervailing equity, or where, for any special facts, it would be inequitable to enforce it. It is a right which the debtor must seasonably assert for himself. The mortgagee owes him no duty to assert it for him, or to institute proceedings to protect it. The equity is simply one which the law will protect, upon seasonable application of the mortgagor, where the mortgagee proceeds to enforce his mortgage.

In this case it appears that Clark levied his attachment in April, obtained his judgment, issued execution, and levied it on the crop in May. Defendant practically abandoned the growing crop to the sheriff, who proceeded to harvest and thresh it, and then hauled it

to an elevator, after turning over nearly one-third of it to defendant as his exemption, the entire cost of all this coming out of the non-exempt part; so that, after paying expenses, Clark realized on his claim only about $16, while defendant got his exemption harvested and threshed free of expense. So far as appears, defendant never asserted the right he now claims until after the grain was harvested and threshed, when he made demand on the sheriff that the plaintiff's seed-grain note be first paid out of the wheat. But this availed nothing. The sheriff was not plaintiff's agent. He was simply the agent of the law, enforcing Clark's execution, with which plaintiff had nothing to do. It is true that it appears that the sheriff told Clark of defendant's demand, and it is said that Clark was plaintiff's agent for the collection of his note. But it does not appear that Clark was plaintiff's agent at this time. It does appear that plaintiff delivered the note to Clark for collection in October, but it nowhere appears when the sheriff communicated defendant's demand to Clark. No proceedings were taken by plaintiff to enforce his mortgage until the institution of this suit in the latter part of November, when for the first time defendant notified plaintiff of his claim by demanding that he take the grain on the seed-grain note, instead of taking the cattle and horses on the mortgage. At this time the wheat was in the elevator, whither it had been taken by the sheriff, so that the demand of the defendant was, in effect, that he should have the benefit of all the enhanced value of the grain resulting from all the expenditures of Clark or of the sheriff in his behalf in harvesting, threshing, and marketing the crop. And right here there is a fatal defect in defendant's proof. Conceding all that defendant claims as the law, yet in no event would plaintiff's mortgage be discharged, except *pro tanto,* to the extent of the value of the non-exempt property which he might and should have taken and applied on the note. Now, while defendant did prove that the value of the grain in the elevator was enough to pay plaintiff's note, yet there is not a particle of evidence what it was worth as a standing crop, unless it is to be inferred from the fact that Clark only realized $16 out of it after paying expenses and setting aside defendant's exemption. There is another important fact. It was and still is an

open question whether Clark's attachment was prior or subsequent to the lien of plaintiff's seed-grain note. That would depend upon whether Clark had notice of the mistake in the description of the land in the first note before he levied his attachment. Now, plaintiff was under no obligation to litigate this question with Clark for the purpose of protecting defendant's right of exemption. It was the duty of defendant himself to assume that responsibility if he wished to protect that right. In short, in any view of the case, defendant has failed to show that plaintiff has disregarded any legal duty which he owed him, or that he himself is in a position to demand the application in his favor of the equitable rule which he now invokes. Consequently no reason is shown why plaintiff is not entitled to the possession of the property according to the terms of this mortgage.

Order affirmed.